**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Shannon Carter, | Case No.: 2:18-cv-00950-JAD-VCF |
| Plaintiff | |
| v. | **Order Screening Complaint and Denying Motion to Appoint Counsel** |
| James Dzurenda, et al., | |
| Defendants | **[ECF No. 2]** |

Plaintiff Shannon Carter brings this civil-rights action under 42 U.S.C. § 1983, claiming that his Eighth Amendment and Fourteenth Amendments rights were violated by numerous defendants when he did not receive medical treatment.[1] Because Carter applies to proceed *in forma pauperis*,[2] I screen his complaint under 28 U.S.C. § 1915A. I find that he has not pled and cannot state claims for violations of his Fourteenth Amendment due process rights, so I dismiss those claims with prejudice. I dismiss without prejudice his Eighth Amendment claims for deliberate indifference to serious medical needs and give him leave to amend those claims. I also deny his motion for appointment of counsel[3] without prejudice.

---

[1] ECF No. 1-1.
[2] ECF No. 1.
[3] ECF No. 2.

**Background**

**A.    Plaintiff's factual allegations**[4]

From 2015 to 2018, Carter was an inmate at Nevada's High Desert State Prison (HDSP).[5] Carter alleges that he has high blood pressure.[6] In 2014, Carter was placed in the Chronic Disease Clinic.[7] Medical Directive 447 (M.D. 447) is the procedure that ensures that chronic-care patients receive adequate medical care for their chronic diseases while housed at HDSP.[8] Carter has not included a copy of M.D. 447 with his complaint, but he alleges that this directive requires nurses to evaluate patients' medications, vital signs, and lab results; requires a nursing plan, including education and lifestyle counseling; and requires nurses to periodically monitor patient compliance with medication regimens and to counsel patients regarding the benefits of compliance.[9] The Medical Director is responsible for developing monitoring standards and procedures for all inmates, and he is in charge of hiring all health care personnel, which is important because HDSP Medical is extremely understaffed.[10]

Carter arrived at HDSP in November 2015, but it was not until June 1, 2016, after multiple kites, that he was seen by Chronic Care.[11] On June 2, 2016, Carter filed a grievance expressing his fear of the Chronic Care program, including follow-up care, education and

---

[4] These facts are taken from the plaintiff's allegations and are not intended as findings of fact.
[5] ECF No. 1-1 at 1.
[6] *Id.* at 6.
[7] *Id.* at 7.
[8] *Id.* at 8.
[9] *Id.* at 8–9.
[10] *Id.* at 9.
[11] *Id.*

2

lifestyle counseling, non-existent physical examinations, and the fact that his blood pressure is very high and HDSP had not been able to contain it.[12]

Carter repeatedly complained to Medical about his headaches from high blood pressure, swelling and pain in his ankles, and pain in his kidneys due to his medicine, routinely late medications, and stress from his bad health.[13] On December 19, 2016, Carter filed an emergency grievance and told Medical that he had gone without his medicine for ten days despite requesting refills. He also informed them that defendant Tawnya Perry had told him that his blood pressure was 171/102 and that he was going to die; although Carter believes that she was lightly joking, he did not find it funny. Carter's grievance also said that he needed his medicine and a full physical examination. He received a response to the grievance, stating that Sergeant Quinn, who is not a defendant, would drop off a five-day supply that night. Two days later and still without his medication, Carter had a stroke.

On April 17, 2018, Carter told his unit officer that, despite multiple kites asking for medicine and reporting that he was suffering from headaches and dizziness, Medical had not come to see him for follow-up and nurses had not complied with M.D. 447 because they had not come by to ask him why we was not taking his medicine.[14] Shortly thereafter, nurse Jane Doe # 6 came to where Carter was housed and took his blood pressure. Carter's blood pressure was high, and he told the nurse that he had not been seen by Medical for months and he believed that he needed a full exam to determine the state of his health. She told him that there were not

---

[12] *Id.* at 9–10.
[13] *Id.* at 10.
[14] *Id.* at 11.

enough doctors and nurses to do follow-up care for all the inmates with chronic-care needs at HDSP.[15]

Carter alleges that, as a result of HDSP's understaffing and lack of compliance with their procedures and M.D. 447, he has suffered from severely painful headaches, swollen ankles and pain in his feet, and frequent urinating due to giving him pills without treatment by the Chronic Care program.[16] Plaintiff is now taking six pills a day, he believes that he is at risk for future harm, and he claims that he is suffering from stress due his poor health and the lack of chronic-care treatment.[17]

**B.    Carter's causes of action**

Based on these events, Carter alleges 23 counts for violations of his Eighth Amendment rights and 23 counts for violations of his Fourteenth Amendment rights.[18] He seeks monetary damages and injunctive relief.[19] Carter sues the State of Nevada, Director James Dzurenda, Dr. Bryan, Nurse Tawnya Perry, A. Buencamino, M. Cervas, HDSP Warden B. Williams, Medical Director Romeo Aranas, and Jane Doe nurses 1-6.[20]

---

[15] *Id.*

[16] *Id.* at 12.

[17] *Id.* at 13.

[18] *Id.* at 14–26.

[19] *Id.* at 29.

[20] ECF No. 1-1 at 2–5. As a general rule, the use of "doe" pleading to identify a defendant is not favored. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). I recognize, however, that there are situations "where the identity of alleged defendants will not be known prior to the filing of a complaint." *Id.* At a minimum, a plaintiff should identify each doe defendant by number and description, and he must allege facts sufficient to show that a particular doe defendant violated his civil rights. Vague and conclusory allegations against a doe defendant who may theoretically exist is not sufficient. If and when discovery begins in this case, Carter will be given the opportunity to learn the identity of any specific doe defendant against whom he states a claim. But Carter is cautioned that a doe defendant cannot be served with process in this action

**Discussion**

**A.   Screening standard**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity.[21] In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous or malicious, or that fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.[22] All or part of the complaint may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis in law or fact. This includes claims based on legal conclusions that are untenable, like claims against defendants who are immune from suit or claims of infringement of a legal interest that clearly does not exist, as well as claims based on fanciful factual allegations or fantastic or delusional scenarios.[23]

Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief.[24] In making this determination, the court takes all allegations of material fact as true and construes them in the light most favorable to the plaintiff.[25] Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers,[26] but a plaintiff must provide more

---

until that defendant has been identified by his or her real name and Carter has successfully moved to substitute that real name in for a doe-defendant placeholder.

[21] *See* 28 U.S.C. § 1915A(a).

[22] *See* 28 U.S.C. § 1915A(b)(1)(2).

[23] *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

[24] *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

[25] *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

[26] *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (recognizing that pro se pleadings must be liberally construed).

5

than mere labels and conclusions.[27] "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations."[28] "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[29]

**B.     Analysis of Carter's claims**

   ***1.     Eighth Amendment claims***

In Counts 1-20 and Counts 41, 43, and 45, Carter alleges that the defendants violated his Eighth Amendment right with their deliberate indifference to serious medical needs.[30] Most of Carter's Eighth Amendment claims focus on alleged failures to comply with or ensure compliance with a medical directive or an administrative regulation. However, a mere violation of prison procedures is not sufficient to show a violation of the Eighth Amendment.[31] Instead, to state an Eighth Amendment violation relating to medical care, a plaintiff must adequately allege deliberate indifference to his serious medical needs with specific facts, not just conclusions.[32] Because most of Carter's Eighth Amendment claims focus on medical directives and regulations and because his claims generally allege conclusions rather than facts showing deliberate indifference, I dismiss these claims without prejudice and with leave to amend.

In order to ensure that Carter is able to amend his complaint in accordance with the law concerning Eighth Amendment claims for deliberate indifference to serious medical needs, I

---

[27] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[28] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).
[29] *Id.*
[30] ECF No. 1-1 at 14–19, 25–26.
[31] *Peralta*, 744 F.3d at 1087.
[32] *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

6

provide him with the following information regarding the relevant legal standards and instruct him that, if he chooses to amend his complaint, **for <u>each</u> particular defendant, he must allege true <u>facts</u> sufficient to show what that defendant knew and believed about a <u>particular</u> <u>serious medical need</u>, what <u>unreasonable</u> action or inaction that defendant chose to take, and what <u>particular</u> harm that defendant <u>caused</u>.**

"To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment— and a subjective standard—deliberate indifference."[33] To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain."[34]

To prove deliberate indifference, a plaintiff must, among other things, prove that the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of <u>facts</u> from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[35] When the issue is exposure to a risk of future harm, deliberate indifference is assessed not based on a prison official's awareness of current harm, but instead is assessed based on the prison official's awareness of a serious *risk* of substantial harm.[36] Because of these deliberate-indifference requirements, a complaint that a medical provider "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does

---

[33] *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

[34] *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted).

[35] *Farmer*, 511 U.S. at 837 (emphasis added); *see also Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (en banc).

[36] *Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Parsons v. Ryan*, 754 F.3d 657, 677 (9th Cir. 2014).

7

not become a constitutional violation merely because the victim is a prisoner."[37] Even gross negligence is insufficient to state a claim for deliberate indifference to serious medical needs.[38]

Merely making a conclusory and vague allegation that a defendant knew that Carter was not receiving care for his chronic medical needs will <u>not</u> be enough. Similarly, if Carter chooses to amend his complaint, it will not be enough for him to allege that a defendant should have been more careful, was responsible for knowing or doing something, or was otherwise negligent or grossly negligent. For example, a failure to read a grievance carefully does not show deliberate indifference. Therefore, if Carter chooses to amend his complaint, for <u>each</u> defendant, he must allege true <u>facts</u> sufficient to show what the defendant knew and believed about a <u>particular</u> serious medical need.

In addition, to prove deliberate indifference, a plaintiff must show a "(a) purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."[39] Prison officials who know of a substantial risk to an inmate's health are liable only "if they responded unreasonably to the risk, even if the harm ultimately was not averted."[40] Thus, prioritizing the patients with the most serious medical needs is not deliberate indifference.[41] Similarly, if a defendant lacks the resources to provide treatment and has no ability to change that situation, that prison official is not deliberately indifferent.[42] Therefore, Carter is advised that it will not be enough for him to simply show that a defendant knew that

---

[37] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).
[38] *See Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).
[39] *Jett*, 439 F.3d at 1096.
[40] *Farmer*, 511 U.S. at 844.
[41] *Peralta*, 744 F.3d at 1085.
[42] *Id.* at 1084–85, 1088.

8

there was insufficient medical staff; if that defendant does not have the ability or authority to increase staffing and meet his medical needs, that defendant's failure to do so is not unreasonable and is not intentional punishment causing Carter harm.

Carter is further advised that, if he chooses to amend his complaint, he may not simply allege that he suffered from particular medical symptoms; he must allege true <u>facts</u> sufficient to show that a specific defendant's particular actions or inactions <u>caused</u> a <u>particular</u> harm. For example, alleging facts sufficient to show that a person is responsible for informing Carter of the benefits of taking medication but made the deliberate conscious decision not to inform him of these benefits will not be sufficient to show that the defendant <u>caused</u> or is causing Carter harm if he already knew that it would be beneficial to take the medication. In contrast, if Carter alleges true facts sufficient to show that a defendant was responsible for informing him of the benefits of taking his medicine, made a conscious choice not to inform him of these benefits, and Carter therefore was ignorant of these benefits and made the decision not to take the medicine due to that ignorance, causing dangerously high blood pressure, Carter may be able to adequately allege causation.

Personal participation by each defendant also is required. A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant."[43] "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§] 1983."[44] "A showing that a supervisor

---

[43] *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

[44] *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (holding that "[b]ecause vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

9

acted, or failed to act, in a manner that was deliberately indifferent to an inmate's Eighth Amendment rights is sufficient to demonstrate the involvement—and the liability—of that supervisor."[45] "Thus, when a supervisor is found liable based on deliberate indifference, the supervisor is being held liable for his or her own culpable action or inaction, not held vicariously liable for the culpable action or inaction of his or her subordinates."[46] So, "a plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates."[47] But a defendant may not be held liable under § 1983 merely because he or she had certain job responsibilities.[48] Plus, as with subordinates, there must be a sufficient causal connection between his or her wrongful conduct and the Constitutional violation.[49] Therefore, when a supervisor merely learns about a constitutional violation after the fact, he cannot be held liable.[50]

As a result of this law, if Carter amends his complaint to include claims against supervisors, he must allege the same kinds of true facts he is required to allege against other defendants. This includes allegations concerning grievances. If Carter seeks to state a claim based on the handling of a grievance, he must allege true <u>facts</u> sufficient to show what the defendant knew and believed, when that defendant knew it, what action Carter asked for, what action or inaction the defendant unreasonably chose to take, and what specific harm that defendant therefore caused.

---

[45] *Starr v. Baca*, 652 F.3d 1202, 1206–07 (9th Cir. 2011).
[46] *Id*. at 1207.
[47] *Id.*
[48] *Cook v. Housewright*, 611 F. Supp. 828, 829–30 (D. Nev. 1985).
[49] *Id.*
[50] *May v. Enomoto*, 633 F.2d 164, 165 (9th Cir. 1980); *Colonna v. CSC Corp.*, No. CV06-0393-PHX-SMMMHB, 2007 WL 3342711, at *5 (D. Ariz. Nov. 8, 2007).

### 2. *Fourteenth Amendment claims*

In Counts 21 through 40 and Counts 42, 44, and 46, Carter alleges Fourteenth Amendment due-process claims based on responses to his grievances and based on the defendants' failure to provide medical care and comply or ensure compliance with administrative regulations, operational procedures, and medical directives.[51] Merely alleging a violation of state or local regulations, procedures, and laws is insufficient to state a violation of due process,[52] and prisoners have no due process rights to the handling of grievances in any particular manner.[53] In addition, when a particular constitutional amendment, such as the Eighth amendment, provides a source of constitutional protection, the legal standards regarding that amendment, not the more generalized notion of substantive due process, are the guide for analyzing such claims.[54] Therefore, Carter does not and cannot state any colorable due-process claims. So, I dismiss Carter's Fourteenth Amendment due-process claims with prejudice because amendment would be futile.

## C. Leave to amend

Because I am not yet convinced that Carter can plead no set of facts that would entitle him to relief for his Eighth Amendment claims, I grant him leave to file an amended complaint to more specifically state these claims using the guidance I've provided on pages 6–10 of this order. If Carter chooses to file an amended complaint, he is cautioned that an amended complaint

---

[51] ECF No. 1-1 at 21-26.

[52] *Swarthout v. Cooke*, 562 U.S. 216, 222 (2011).

[53] *See Mann v. Adams*, 640 (9th Cir. 1988); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Patterson v. Kane*, No. 06-15781, 2006 WL 3698654, at *1 (9th Cir. Dec. 13, 2006) (recognizing that denial of a grievance does not rise to the level of a constitutional violation).

[54] *Albright v. Oliver*, 510 U.S. 266, 273 (1994); *Graham v. Connor*, 490 U.S. 386, 395 (1989).

supersedes the original complaint, so the amended complaint must be complete in itself.[55] Carter's amended complaint must therefore contain all claims, defendants, and factual allegations that he wishes to pursue in this lawsuit. He must file the amended complaint on this court's approved prisoner civil-rights form, write the words "First Amended" above the words "Civil Rights Complaint" in the caption, and follow the instructions on the form. **In each count**, he must allege true facts sufficient to show what **each** defendant did to violate his civil rights. If Carter chooses to file an amended complaint, he must do so by April 22, 2019. If Carter does not file an amended complaint by April 22, 2019, this case will be dismissed and closed without further notice.

### D. Motion for appointment of counsel

Like many prisoners raising medical claims before this court, Carter moves for appointment of counsel, arguing that his medical issues are complex and that being in prison limits his ability to litigate.[56] Indigent, civil-rights litigants like Carter do not have a constitutional right to appointed counsel.[57] Instead, these requests are governed by 28 U.S.C. § 1915(e)(1), which allows the court to "request an attorney to represent any person unable to afford counsel." Courts do so only in "exceptional circumstances."[58] "When determining whether 'exceptional circumstances' exist, a court must consider 'the likelihood of success on the merits as well as the ability of the [plaintiff] to articulate his claims *pro se* in light of the

---

[55] *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (holding that for claims dismissed with prejudice, a plaintiff is not required to reallege such claims in a subsequent amended complaint to preserve them for appeal).

[56] ECF No. 2.

[57] *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981).

[58] *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (§ 1983 action).

complexity of the legal issues involved."[59]  "Neither of these considerations is dispositive and instead must be viewed together."[60]

I do not find exceptional circumstances that warrant the appointment of counsel for Carter at this time, and I find that it is premature to determine the likelihood of success and the complexity of the matters.  Therefore, I deny Carter's motion for appointment of counsel without prejudice to his ability to file a motion after he files an amended complaint and the court has determined that he has pled claims that will survive screening.

## Conclusion

IT IS THEREFORE ORDERED that:

- Carter's **Fourteenth Amendment due-process claims are DISMISSED with prejudice**;

- Carter's **Eighth Amendment claims for deliberate indifference to serious medical needs are DISMISSED with leave to amend by April 22, 2019.**  If Carter chooses to file an amended complaint, he should use the approved form and he must write the words "First Amended" above the words "Civil Rights Complaint" in the caption.  **If Carter does not file an amended complaint, by April 22, 2019, this action will be dismissed**; and

- Carter's **motion for appointment of counsel [ECF No. 2] is DENIED** without prejudice.

---

[59] *Id*.

[60] *Id*.

IT IS FURTHER ORDERED that I direct **the Clerk of the Court to:**

- **FILE** the complaint (ECF No. 1-1); and
- **SEND** plaintiff the approved form for filing a § 1983 prisoner complaint, instructions for the same, and a copy of his original complaint (ECF No. 1-1).

I defer the decision on Carter's application to proceed *in forma pauperis* [ECF No. 1].

Dated: March 22, 2019

_____
U.S. District Judge Jennifer A. Dorsey